uh... both judging or i have been judged for a while often at this time of stated litigants if you have been a courtroom before here are some rules but i haven't been in the courtroom in a year and i'm not exactly sure what the rules is somebody on the screen to my right hope judge egan botham is with us but we have three cases today uh... we'll see how well it goes with uh... this dual appearance in person and remotely by uh... our colleague we will have uh... restrictions that whatever our courtroom deputy and others have told you about uh... about how to proceed and i'm not necessarily familiar with all of what those may be but nonetheless uh... main thing i will say here is that as i'm sure all of you are fully aware of this is a appellate argument it is to hear the law and the facts in a dispassionate way to help us understand through our questions and through your presentations what is most helpful to us in deciding these cases our first case of the day twenty one oh five eight eight united states versus clarence bass we'll hear from defense counsel first uh... have you orally argued in person in a year uh... i've actually had a trial back in june in the eastern district here uh... not orally so uh... may it please the court my name is joey mongaris and i represent mister clarence bass uh... mister bass's fourth amendment rights were violated at every stop here by the arresting officers i believe it'd be helpful to do a timeline just a brief timeline i understand the court has seen the record however here we have an off-duty police officer officer langlis is at a stoplight uh... and all he sees is is a black gentleman standing next to an open trunk that's what he sees he particularly described automobile yes and he particularly described the automobile at that time i i believe he died later on yes relayed uh... mister langlis at that point calls doesn't call dispatch he calls a friend of his and says hey there's somebody selling cds uh... that's what that right there and then from there officer boudet gets instruction from his supervising officer that somebody is selling cds then officer boudet arrives at the scene he sees mister bass with uh... well we move on the timeline and i appreciate you handling it in that way uh... because i think it's important the continuum of events that wasn't the only information they had though was was it i mean he had been seen there before doing what was reported that he had was selling bootlegged uh... cds and dvds at that location in that vehicle and they were aware of that as well weren't they before they encountered him this time so some of that is correct some of that is incorrect and that's kind of why i believe the timeline is helpful and i'll start on that officer langlis other than there's no other word for it he lied uh... at when he said he saw mister bass selling cds or something that's a conclusionary statement on what he believed and in the motion to suppress he he testifies he did not see mister bass conduct any sort of transaction so when he calls that office he calls his friend in the police department he lies he says i saw mister bass selling cds that's a lie and so uh... then officer boudet goes out there he does later testify and in and on the uh... cd and on his body cam he says i've seen you uh... i've seen or heard about i haven't seen you specifically but i've heard about you this car uh... not at that location however it was established during the hearing that at that specific location mister bass was not seen he says somewhere else so here what what we have is is we have a lie based upon officer langlis' lie officer boudet is now there and that's why we argue that the initial reasonable suspicion if the testimony was correct in front of the district judge then she had the opportunity to factor not only that as a factual statement but also to consider the credibility or not of the initial officer wasn't that all baked into the cake of the ruling that we're here for it was your honor and and uh... and we can say that that i don't i can't rejudge linds mine at the time and i i've read a ruling i i don't the to the tip i don't i don't believe necessarily was part of her main concern and that was just due to the question the trial counsel time that was just the question did he have a did officer boudet take away the tip did officer boudet i believe this court under hensley can take away that tip from officer langlis because this wasn't a flyer uh... based on any sort of reasonable articulable facts or suspicion that officer langlis saw this was purely he sees somebody and and granted in a high crime rate area but this is not at night this is during this is five forty five it's it's daylight this is not at night and as as this court has said in hill being in a high crime rate area is not enough counsel this you use the phrase and send a briefing and maybe the district court even mentioned that this is a high crime area high crime beyond selling of cds and dvds i take it no sir so the government is a little misleading in their uh... in their brief where it says this this area was known for selling cds this area was not known for selling cds this area is high crime and officer langlis and boudet both testify that the reason this is a high crime rate area and as this court probably knows they've heard many attorneys in many cases is that high crime is for drugs guns and violence and that's what officer langlis testifies so it's a bit misleading he does say he's known and seen through his experience it does seem to me that those sorts of crimes which to me is what high crime area means does it have any relevance uh... we'll hear from the other side too in deciding I mean isn't that sort of beside the point in what happened as to your client maybe I'm misunderstanding I don't believe I don't think there was any relevance of a high crime rate area in this particular instance if what you're asking I don't believe that that's uh... maybe it's training experience but officer langlis testified at the motion to press there's nothing per se wrong with standing next to a trunk so now the initial reason for officer boudet being there for that reasonable suspicion is based upon a lie by officer langlis or at best a conclusionary statement that bass is selling cds when officer boudet arrives now in his body cam he says he's selling cds he's making a transaction but we later learn through cross-examination that's not the case he does not see any cds whatsoever when he first arrives and he does not see them private citizen they're all private citizens but the person to whom he may have sold named floyd is that the name of the person uh... there was some sort of interchange believe between them was there not and uh... floyd says he gave it gave me the cd or dvd dvd whatever one it was so whoever saw your client at the trunk and this other person there actually was an exchange is that and that's supported by the record it is accurate that there was an exchange it's not accurate that mister boudet officer excuse me officer boudet saw an exchange he admits he did not see an we don't have two different no sir so mister bass and what officer boudet in essence testifies to is that they were exchanging pleasantries so now we have we have uh... a gentleman wait a minute i thought floyd said that he was given a cd yes sir that's later on uh... early i'm trying not to skip ahead to mister floyd but yes sir there was a transaction but objectively where the officer is when he first arrives is he does not see a transaction he officer boudet admits he only sees mister bass and mister floyd exchanging pleasantries so at that time he has to have some objective reasonable uh... suspicion that that crime is afoot or some articulable facts in order to detain him he doesn't have that so now what we have is just a black gentleman standing next to an open trunk and then that in essence gets officer boudet there where he only now sees pleasantries exchanged between mister floyd and mister bass now yes later on it and so at this point officer boudet asks mister bass and admittedly so says are you exchanging are you selling cds and that's within the minute why does mister bass close the trunk he closes the trunk when the officer arrives doesn't he so it the court has access to the video it's unclear it's unclear uh... whether or not mister bass see i don't know whether yes he does close the trunk i don't know if that's necessarily uh... mister floyd's walking away mister bass walking away presumably to leave i imagine uh... i don't necessarily but counsel he popped the trunk voluntarily i understand it at some point at some point within he closed the trunk we can say that at that point uh... that they would have to have some probable cause or something to do so but then he reached over and popped the trunk and the lady couldn't see in difficulty i have with you this final argument is that once you've been to the trunk where he saw these large numbers of cds rails etc etc uh... if if unless you can and attack that uh... what appears to be a consensual uh... search uh... observation anyway he plainly would have probable cause once he saw those all those cds in there yes sir and i think we're jumping ahead from what judge inglehart i think was asking originally so Mr. Bass closes the trunk when officer budette arrives and then officer budette asks questions within five minutes of questioning which we believe was unreasonable questioning uh... to try to expand the scope of the search or of the stop and just trying to ask officer budette consistently asks he doesn't conduct any sort of investigation all he asks is can i have consent to search the car can i have some consent to search the car and so under schar and why we believe the detention was exceeded the scope he never tried to examine it well judge i'll answer your question now listen to me please and he would uh... the difficulty i'm having is that is that when he voluntarily popped the trunk and you're so you can you can you can say that apart from any of this thing that the entire detention was was fouled because they detained him too long for a terrorist stop and so my concern is that where are you if in fact the the the popping of the trunk was consensual and i thought it was stated that it was and i apologize judge if i didn't catch all of that but i will get to we don't believe we don't believe mr bass voluntarily opened the trunk we believe that uh... officer budette uh... if you look at the factors laid out by the court the six factors we don't believe that bass voluntarily opened the trunk we believe that officer budette used coercive measures uh... if you look at the extent his awareness of his right to refuse he asked officer budette what happens uh... if i don't consent to the search uh... his education and intelligence level uh... as the PSR states mr bass does not have a high education level and the belief that there's incriminating evidence being found which clearly bass knew would be found what we have now is that mr bass does pop open the trunk your honor and at that point officer budette only sees binders in the trunk not cd he sees one spindle of cds and on that spindle it's just if the court has those you can only see the top of the cd and so at that point he sees sharpie written on one cd now granted there's i'm sure if you look underneath those cds but now his he's the officer's trying to focus now on probable cause once that trunk is open and so he sees granted binders but he doesn't see cds and binders or know what's on those cds and he sees sharpie written on one cd on top of the spindle and so based upon mr bass's statements that he's selling cds uh... and and that you know he's been in trouble before uh... miss officer budette tries to gain some sort of suspicion but then your honor he talks to mr floyd and mr floyd says he actually didn't sell me the cds he just gave me the cds so at this point your honor we're at the eight minute around the eight minute mark of mr bass being there and nothing is illegal per se selling cds is not illegal per se uh... if he's covering ground you've covered before and if judge jacob boston's satisfied we're at the two minute mark of your argument yes sir and uh... why don't you discuss your armed career criminal act claim that you have no sir the armed career criminal enhancement well your honor i understand the ruling in i believe it's schoeller uh... we don't we don't necessarily believe we're absolutely foreclosed on that uh... i understand it's not good with the reliance on vickers and schoeller and printis however i believe it's it's a bit different than what it's your interpretation of the arkansas statute that i'm interested you would flesh out well that's where is this not coterminous with the conduct that we need to be looking for under the uh... section nine twenty two correct so the arkansas i don't want to get it confused with the arkansas statute criminalizes here uh... what we believe is conduct greater than what congress or even schoeller says they we believe it narrowed the involving uh... like specific conduct here uh... in this arkansas statute uh... the former definition of delivery is a defendant could be convicted if the defendant did not possess controlled substance or the delivery never occurred so so that is conduct that that mister bass uh... if that or that this statute has that he could have been convicted of this uh... in arkansas we believe that that goes beyond what the schoeller ruling said what would you say in the argument about shepherd documents even if you're right there which the government doesn't concede we do have the judgment from those convictions they indicated he actually did have possession uh... with intent to distribute or whatever the phrase is in arkansas wouldn't that take care of it uh... and i'm out of time your honor if i may answer yes at our time if you're answering a question yes sir uh... i i do uh... i understand where the court is going towards that you can shepherdize and actually see what mister bass was uh... actually convicted of however uh... i i just don't believe that uh... here uh... a court i still believe that a court must imagine what kind of uh... conduct in ordinary crime would prohibit and here i i just i don't see that that i i just that statute is over the arkansas statute is over broadened and does not take into account what akka i don't don't want to respond to this but i have the impression you don't see that it's the strongest part of your case no your honor  we'll hear from the judge may it please the court ryan niedermeyer on behalf of the united states let me ask something that goes to both counsel were you hearing judge higginbotham all right was it distorted or anything like that when he was asking the question uh... it from counsel's table it was a little distorted i'm not sure how it heard up up here yes from here as well but i guess that is the best we can do we'll see if we can improve it yes your honor this court should affirm the district court's denial of mister bass's motion to after conducting a two-and-a-half hour evidentiary hearing chief judge lynn found that police were responding to a tip from an off-duty police officer that make of your friend on the other side saying that that initial report was an imaginative one that's not the word he used but an incorrect explanation of what was seen my opposing counsel says that officer langlois lied at the suppression hearing uh... and i i would respectfully disagree uh... if you look at the records specifically uh... two seventy six through two seventy seven officer langlois testified to the district court that he called sergeant martin to report bass selling something out of his trunk uh... he didn't claim that he specifically said it was cds he just saw a man standing next to a purple challenger with a red stripe appearing to sell something out of the trunk of his vehicle and officer bidet once he gets on the stand and he's cross-examined or wherever this comes out what was being said in the earlier argument i guess he the officer acknowledged that he didn't actually see the sale this was an extrapolation from what he saw is that a lie no your honor that's exactly that's exactly correct he said that he saw bass gesturing from his vehicle and in his experience as a law enforcement officer that appeared to him to be someone selling something out of the vehicle uh... and that's uh... district the district court also found that in its motion and you know i would point out that mister bass uh... in his brief did not claim that the district court committed clear error uh... when it found the facts supporting its its order on the suppression motion let me move on to what was seen in the trunk once the officer walks up is there evidence on which i don't know if judge lynn says this in her order did the officer actually see cds marked with a sharpie or whatever before the trunk was closed as that officer was walking up to bass as the officer initially saw bass he testified that he saw bass holding a binder and having a hand to hand transaction with mister floyd and in the officer's experience he he had experience with unlawful cd sales and he said you know that's that's the kind of behavior that i would see and then bass took that binder put it in the trunk of his car and closed the trunk when he saw officer bidet and importantly when officer bidet walked up it seems to me part of your argument is once the trunk is open back up again you see these bootleg cds and dvds you gotta have some knowledge some probable cause to believe that's what they are do you think that probable cause had arisen already when the officer was walking up sees them in bass's hands i don't think that's been your argument and puts them in the trunk don't you need insofar as the argument you made so far aren't you relying on what was seen after the trunk was opened a second time or opened again yes sir uh... it seems to me it's harder to say that he had seen enough as he was walking up and saw these in his hand to identify what they were i agree your honor i if it was only officer bidet's observation i i would agree that that wouldn't be probable cause enough however he immediately asked mr bass hey what's up did you just sell him cds and mr bass said yes i have and then mr bass admits that he had been previously charged with unlawful labeling cds and when officer bidet asked is there anything else illegal in the car that i need to know about bass says just the cds uh... at that point it's officer bidet had probable cause that mr bass was illegally selling cds uh... mr bass admitted that he was he admitted that more cds would be found in the car and that those were the illegal things that would be found in the car uh... and at that point officer bidet had probable cause to believe that bass was selling uh... pirated cds uh... and even if there was no probable cause at that point there certainly was once he saw the mass amount of cds in the trunk uh... counsel let me ask you maybe this is uh... a follow-up to what judge southwick just asked but my focus is on the time period from the time officer bidet or bidet as we'd say in south louisiana shows up uh... trunk is closed and it seems like there's an inordinate amount of time where he's questioning you and i know you've watched the videotape a lot more than i have where he's questioning i guess someone could even say if you were to be an advocate that he's badgering uh... and mr bass says well i need to call my wife because it's her car and there's this whole dialogue that extends i think counsel said something like eight minutes at some point before he finally relents mister bass finally relents how would you classify that time in terms of being a terry stop or you mentioned probable cause at the outset of that time period how would walk us through that to the point where he opens the trunk and how is that uh... legally sufficient for officer bidet to continue the encounter yes your honor uh... at that point i'd still would classify the stop as a terry stop and officer bidet was diligently trying to investigate the unlawful cd sales uh... especially since bass admitted that more cds were in the car it was perfectly reasonable for officer bidet to try to gain entry to the car through consent uh... and as far as the consent itself goes uh... the repeated questioning to gain access to the vehicle uh... i'm not aware of any cases that would say that that was coercive and the district court certainly didn't find that it was coercive detained from for instance for miranda purposes at that time no your honor he was not detained uh... for miranda purposes until after after the trunk is open and he's placed under arrest yes i understood that to be your position but he's told he can't call his wife uh... he doesn't try to get in the car drive off but it seems pretty clear that that would be not the right thing to do under the circumstances uh... uh... i have problems classifying that as as a a non that he's not being detained yes your honor what's your best case that would inform the court that that's not uh... that that is a a valid terry stop and that he's not detained uh... your honor i would point this court to uh... to united states v uh... salinas which uh... i i believe i don't believe i used in my brief your honor i came across that case in preparation for this argument uh... i wasn't sure uh... how central it would be uh... but in that case uh... this court talked about restricting the defendant's cell phone use is not by itself sufficient to conclude the defendant was in custody uh... and you know i officer bidet made very clear when he was talking to bass uh... you know i don't want you calling anyone because i don't know who you're calling uh... it certainly is an aspect of officer safety there uh... so restricting his cell phone use in and of itself is this court has said that that is not itself sufficient to conclude that he was in custody why don't you respond to the same question but in terms of categories when did the terry's stop end when did probable cause begin when probable cause began or when um... the terry's stop moved into an arrest uh... when did when when is the justification in your argument for this encounter uh... continue and when does it end under terry and when do you does the officer have the right whether he exercises it yet to arrest him the officer certainly uh... had there's no doubt that officer bidet had probable cause when he saw the cds in the trunk it was very clear that meaning when it was opened second time open as he's walking up closed when it's re-opened yes your honor when when bass pops in are you saying it was terry all the way until getting back to judge inglehart's these seven or eight minutes of careful investigatory work or badgering depending on your point of view all of that's terry in your best sort of characterization uh... yes your honor in the the trunk was open at the five minute mark uh... and he officer bidet then goes and talks to floyd for a little while and then comes back and asks again to search the rest of the vehicle bass doesn't let him and uh... he says well i i believe that i have i have the ability to and i i would say at that point bass is now in custody he's put on the curb he's put in handcuffs he has another officer standing over him uh... it's pretty clear at that point that he's in custody uh... under certainly under the fourth amendment and i would say that that's where the terry stop had ended and had moved uh... into a into a arrest there's case law all these phrases get tossed around there's no stopwatch on a terry stop but it does seem to me that there is a problem not necessarily in this case but there's a problem just uh... analytically that a terry stop can be continued basically indefinitely and it seems to me there's at least prospect uh... that as he's trying to dispel his suspicions uh... this particular officer uh... is getting close to some sort of uh... overly extended uh... effort to to remove or confirm his suspicions i mean what is when do those efforts to continue questioning to try to get a better answer when does that time period end in this situation when would it have gone on too long give me some sort of sense of when it would actually be a problem because obviously you think it wasn't a problem in this case your honor i i would say if bass hadn't initially admitted to selling cds that he had he didn't admit that he had previously sold cds and that officer bidet was still trying to get into the car that would that would be you know just badgering and not diligently investigating uh... you're saying that terry was what justified the stop until the uh... trunk was opened a second time if bass just never agreed to open the trunk doesn't bass have to just step away at some point and say uh... thank you mister citizen nothing further i can do here the officer bidet still had probable cause to search the vehicle under the automobile exception now the district court didn't necessarily look at that exception in in its order however as this court knows it can affirm on any basis uh... and officer bidet again at that point he has a previous complaint about mister bass selling cds out of the trunk of his purple challenger with a red stripe he has a tip that mister bass is selling something again and he gets an admission that he's selling cds in an admission that he has more cds in the car at that point officer bidet has probable cause to believe that the evidence of unlawful labeling in texas or selling pirated uh... materials would be found in the car uh... and so whether or not bass had consented officer bidet still had probable cause to to search that vehicle under the automobile exception uh... and so if officer bidet had then searched the vehicle under the automobile exception he would have not only found cds he would have found the backpack full of uh... drugs that uh... that bass was charged for at the state level and bass would have still been searched incident to arrest and the pistol for which he was federally charged and convicted would have been found in his pocket uh... so the automobile exception applies here just as well as the courts uh... the district court's original finding that the search incident to arrest also applies and as far as uh... as far as the consent question goes uh... the continued questioning of mister bass to get in the vehicle is even if that were to be found coercive that is just one of many factors that the district court analyzed uh... on in in this case the court the court specifically found that police were not coercive uh... and specifically that officer bidet was reasonable in discussing uh... in talking to mister bass that he didn't raise his voice he didn't curse he didn't have his hand on his on his gun uh... now mister bass's custodial status does weigh uh... in favor of finding that he did not consent uh... and so does so does his knowledge that incriminating evidence would be found in his car uh... however the other factors still weigh in favor of finding voluntary consent uh... bass was cooperative he volunteered information about his previous charges uh... and he admitted having more cds in his car and he offered to pop the trunk uh... for for the officer uh... and he also was aware of his right to refuse consent and my opposing counsel mentions mister bass's limited education however this court has specifically said that that's not a dispositive factor and that's in usv soriano uh... in that case mister soriano I believe had a sixth grade education and this court said that that's still not enough to necessarily say that he wasn't aware uh... of his ability to consent that he didn't know what was going on and so that's certainly not dispositive in in this case and so whether it's under the automobile exception or a search incident to arrest after consent was given to search the vehicle uh... officer bidet did not violate his fourth amendment uh... mister bass's fourth amendment rights in his dealing with him and um... as far as the ACA argument goes in this case your honor uh... i believe that the i believe the court's intuition is correct that not only is this arkansas statute absolutely uh... a a predicate uh... for ACA also if you look at the shepherd documents this court has said that that statute is divisible we can look at the shepherd documents in this case mister bass was charged with actual possession in arkansas what is the shepherd document here the PSR refers to the information we didn't find the actual information the indictment slash information uh... there is fairly form mortal plate judgment with blanks filled in have you looked at that what would you claim assert is the shepherd relevant material here yes your honor uh... the the PSR did rely on the information uh... and i believe the government had submitted uh... at at the district court level had submitted documents with with the uh... information uh... i apologize i can't recall exactly the ROA number but uh... i i believe they were attached to to the uh... courts and i just wasn't sure it was before the district court and and whether it was attached to the PSR or just what but we did not find the capital letter I information uh... charge document but maybe it's there keep going yes your honor uh... in so i think this court's intuition is is is correct in specifically uh... opposing counsel's argument that the delivery definition is too broad this court has looked at a similar delivery definition under texas statute in united states v prentiss and found that uh... it was not too broad uh... at all and this was post shular uh... so i believe that uh... this certainly serves as an act of predicate uh... and if the court has no more questions i i would like to yield my time back to the court thank you counsel thank you your honors just in quick response to uh... a few things that counsel government just explained if the court looks at the record uh... one twenty two there was an examining trial uh... where officer boudette was testified and he testified that his supervisor that that day i was having a meeting with my supervisor along with my partner officer williams my supervisor received a phone call from an off-duty officer that was going home that off-duty officer informed my supervisor that defendant bass was selling dvds at the corner of the intersection of cockrell hill and camp wisdom that is why we believe officer langlis tip was a lie because that was what was relayed to officer uh... to officer boudette's supervisor uh... secondly uh... with regards to what officer boudette actually saw when he arrived on the record on three oh nine uh... and during cross-examination he he testifies he only saw pleasantries between mister bass and mister floyd so he does not see mister bass conducting sort of transaction he admits that in fact i did not see a transaction i just saw pleasantries they're basing this uh... his conclusion that something is illegal based upon a lie now i understand that they have some training and experience uh... but officer boudette and i understand we're not supposed to look at the subjective intent of officer boudette i understand that but he immediately says you're doing something illegal i mean within the first five minutes he tells mister bass there's something illegal selling cds is not per se illegal at most here if you're selling your own cd without permission of of the store owner that's a city code violation that's a non-arrestable offense it's a ticketable offense that's it at most now what officer boudette later finds out uh... and and under taylor uh... officer boudette must not disregard facts that tend to dissipate probable cause what officer boudette later finds out is that in fact mister bass did not sell mister floyd cds so there's nothing illegal that occurred at this point and and granted this is after the trunk is open so here's what uh... what the government wants this court under the automobile exception the officer has to have probable cause to believe the vehicle contains contraband did he say at the outset of the encounter did mister bass say i'm selling cds yes he did and we can't take back that fact that is not per se illegal if he's selling cds if it's his own cd that's not illegal and officer boudette never tried to ask him that all he and the court made a great point earlier all he tried to do is try to search his car can i have consent can i have consent and at one point i believe i don't exactly know i would say at the ten minute mark he says for the fifth time and that was probably more than five times can i search your car now it's a little confusing because officer boudette tells mister bass you're not arrested you're just detained but at the suppression hearing he says oh no i had enough probable cause to arrest him at the five minute mark when i saw a spindle of cds with sharpie written on it so what we don't have here this high crime rate area that's known for selling cds what we have here is mister bass saying i'm selling cds that's not per se illegal and then he actually was not selling cds so at that five minute mark of seeing a sharpie and not asking or trying to investigate whether or not those cds were illegal or it was actually contraband it was unreasonable that definitely exceeded the scope uh... from what this court and the supreme court has ruled in terry and other cases it exceeded the scope of why he was there and this court in spears and in mckinney most recently in quoting spears the common in that case the court said the common occurrence of a backpack in a vehicle and the multitude of innocent uses for that backpack make the presence of the backpack little persuasive value here the same thing as cds while the court doesn't while the officer doesn't have to dispel all uses of innocent reasons it's cds there's many innocent reasons it could have been his own cd where he says mister bass's music and that's what he wrote on sharpie that's not illegal and that doesn't give him probable cause under the automobile exception thank you alright counsel thank you both